Appeal No. 19-30661

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

*MEAGHAN DOHERTY,*

*Plaintiff-Appellee,*

*v.*

*NATIONAL BOARD OF MEDICAL EXAMINERS,*

*Defendant-Appellant.*

## DEFENDANT'S OPPOSED EMERGENCY MOTION TO STAY INJUNCTION PENDING APPEAL

Robert A. Burgoyne
PERKINS COIE LLP
700 Thirteenth Street N.W.,
Suite 600
Washington, DC 20005-3960
Telephone: 202.654.1744
Facsimile: 202.624.9548

Eric B. Wolff
Alison R. Caditz
PERKINS COIE LLP
1201 Third Avenue,
Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for
Defendant-Appellant
NATIONAL BOARD OF
MEDICAL EXAMINERS

# CERTIFICATE OF INTERESTED PERSONS

## NO. 19-30661

*MEAGHAN DOHERTY,*
*Plaintiff-Appellee,*
*v.*
*NATIONAL BOARD OF MEDICAL EXAMINERS,*
*Defendant-Appellant.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Defendant-Appellant:**
National Board of Medical Examiners

**Counsel for Defendant-Appellant:**
Eric B. Wolff
Robert A. Burgoyne
Alison R. Caditz

**Plaintiff-Appellee:**
- Meaghan Doherty

**Counsel for Plaintiff-Appellee:**
- Frances M. Olivier
- William Martin McGoey

/s/ Eric B. Wolff
Eric B. Wolff

*Counsel of Record for Defendant-Appellant*

-i-

# TABLE OF CONTENTS

**PAGE**

Certificate of Interested Persons ............................................i

Table of Contents ....................................................................ii

Table of Authorities.................................................................iii

Introduction and Nature of the Emergency ...........................1

    A.    National Board of Medical Examiners ................4

    B.    Meaghan Doherty...................................................5

    C.    District Court Proceedings....................................9

Argument.............................................................................13

    I.    This Court is likely to reverse the preliminary injunction on the merits.....................................15

    II.    NBME and other test-takers will be irreparably harmed absent a stay.........................................21

    III.    A stay will not substantially harm Plaintiff. ....22

    IV.    The public interest strongly favors a stay.........26

Conclusion ...........................................................................26

Certificate of Conference.....................................................28

Certificate of Compliance.....................................................29

Certificate of Compliance with Rule 27.3.............................30

Certificate of Service ...........................................................31

# TABLE OF AUTHORITIES

PAGE

CASES

*Bach v. Law Sch. Admission Council,*
 2014 U.S. Dist. LEXIS 124632
 (M.D.N.C. Feb. 4, 2014) ........................................ 21, 23, 26

*Baer v. Nat'l Bd. of Med. Exam'rs,*
 392 F. Supp. 2d 42 (D. Mass. 2005) ................................. 24

*Barber v. Bryant,*
 833 F.3d 510 (5th Cir. 2016) ........................................... 14

*Bibber v. Nat'l Bd. of Osteopathic Med. Exam'r, Inc.,*
 2016 WL 1404157 (E.D. Pa. Apr. 11, 2016) ............... 17, 20

*Black v. Nat'l Bd. of Med. Exam'rs,*
 281 F. Supp. 3d 1247 (M.D. Fla. 2017) ....................... 16, 20

*Byrum v. Landreth,*
 566 F.3d 442 (5th Cir. 2009) ........................................... 15

*Campaign for S. Equal. v. Bryant,*
 773 F.3d 55 (5th Cir. 2014) ............................................. 14

*Campbell v. Lamar Inst. of Tech.,*
 842 F.3d 375 (5th Cir. 2016) ........................................... 26

*Doe v. N.Y. Univ.,*
 666 F.2d 761 (2d Cir. 1981) ............................................ 23

*Doe v. Ohio State Univ.,*
 2016 WL 692547 (S.D. Ohio Feb. 22, 2016) ................... 24

*Glueck v. Nat'l Conference of Bar Exam'rs,*
 2018 WL 3977891 (W.D. Tex. Aug. 20, 2018) ................. 17

145523095.1

# TABLE OF AUTHORITIES
(continued)

**PAGE**

*Janvey v. Alguire,*
  647 F.3d 585 (5th Cir. 2011)............................................15

*Kelly v. W. Va. Bd. Of Law Exam'rs,*
  2008 U.S. Dist. LEXIS 56840 (S.D.W. Va. July 24, 2008)
  ........................................................................................24

*Love v. Law Sch. Admission Council, Inc.,*
  513 F. Supp. 2d 206 (E.D. Pa. 2007) ...................................7

*Mann v. La. High Sch. Athletic Ass'n,*
  535 F. App'x 405 (5th Cir. 2013) ................................15, 17

*Martinez v. Mathews,*
  544 F.2d 1233 (5th Cir. 1976)..........................................20

*Neely v. PSEG Tex., Ltd. P'ship,*
  735 F.3d 242 (5th Cir. 2013)............................................16

*Powell v. Nat'l Bd. of Med. Exam'rs,*
  364 F.3d 79 (2d Cir. 2004) ...........................................5, 22

*Rawdin v. Am. Bd. of Pediatrics,*
  985 F. Supp. 2d 636 (E.D. Pa. 2013) ................................17

*Rothberg v. Law Sch. Admission Council,*
  102 F. App'x 122 (10th Cir. 2004)...............................22, 23

*SEC v. Van Waeyenberghe,*
  990 F.2d 845 (5th Cir. 1993)............................................11

*Veasey v. Perry,*
  769 F.3d 890 (5th Cir. 2014)............................................14

145523095.1

# TABLE OF AUTHORITIES
(continued)

**PAGE**

**STATUTES**

42 U.S.C. § 12101, *et seq.* ............................................. passim

42 U.S.C. § 12102 ................................................................ 15

**RULES & REGULATIONS**

Fed. R. App. P. 8 ................................................................... 13

Fed. R. Civ. P. 3 ..................................................................... 9

Fed. R. Civ. P. 65 ................................................................. 11

28 C.F.R. § 36.105 ...................................................... 3, 16, 17

**OTHER AUTHORITIES**

Jennifer Medina et al., *Actresses, Business Leaders and Other Wealthy Parents Charged in U.S. College Entry Fraud*, New York Times, March 12, 2019, available at https://www.nytimes.com/2019/03/12/us/college-admissions-cheating-scandal.html ................................... 5

*SAT Percentile Ranks: 2011 College-Bound Seniors—Critical Reading, Mathematics and Writing Percentile Ranks*, College Board, https://secure-media.collegeboard.org/digitalServices/pdf/SAT-Percentile_Ranks_2011.pdf .............................................. 7

145523095.1

## INTRODUCTION AND
## NATURE OF THE EMERGENCY

Shortly before taking the Step 2 Clinical Knowledge ("Step 2 CK") component of the United States Medical Licensing Examination ("USMLE"), Plaintiff Meaghan Doherty rushed into federal court claiming to have a learning disability that entitled her to extra testing time under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. She also requested that the entire case be sealed. There was *no evidence* that Ms. Doherty is the least bit reading disabled compared to the general population; yet that is what the district court found, granting a preliminary injunction based on that erroneous finding without giving Defendant a meaningful chance to respond, and sealing the entire case before Defendant had any chance to oppose the requested sealing. Since then, the district court has denied a stay. Plaintiff now stands positioned to receive a score that was not fairly earned and thereby obtain a residency position at the expense of other test-takers.

The National Board of Medical Examiners ("NBME") requests an emergency stay pending appeal of the district court's preliminary injunction that allowed Plaintiff to test

with 50 percent more time than other examinees and ordered NBME to release Plaintiff's score. While the testing accommodation has already occurred, the release of the score has not. The district court ordered the score be released to Plaintiff in the ordinary course, on or before September 4, 2019. NBME sought a stay pending appeal, which the district court denied on August 27, 2019.

NBME has a strong likelihood of succeeding on the merits. Plaintiff is not disabled under the ADA. Her academic record and history of top scores on prior standardized tests show that, as do the results of her diagnostic assessments. Plaintiff never received any accommodations before medical school. She scored, under standard conditions, in the top one percent of all individuals who took the ACT college admissions test, and in the top 12 percent on the extremely challenging Medical College Admissions Test ("MCAT").

Plaintiff is a bright, high-achieving person who was concerned about the possibility of receiving a lower USMLE score than she desires. But while she may not be in the upper echelon of medical students—an elite slice of the population—she is absolutely not "substantially limit[ed]" in "a

-2-

major life activity as compared to most people in the general population," 28 C.F.R. § 36.105(d)(1)(v), and thus is not disabled within the meaning of the ADA. Plaintiff offered no evidence that her reading level is below that of most people in the general population, and neither she nor her psychologist even attempted to argue she is.

Receiving unwarranted accommodations on a standardized test—particularly extra testing time—compromises the validity of the resulting scores and affords an unfair advantage to the examinee who receives those accommodations. If the district court's erroneous injunction is not stayed pending appeal and NBME must release the score to Plaintiff on September 4, Plaintiff has said she will immediately submit her Step 2 CK score as part of her application to residency programs. Applications can be submitted to a central processing service beginning on September 5, and residency programs will rely on the score as early as September 15, to the potential detriment of other candidates and the residency programs themselves. This would unfairly advantage Plaintiff, harm NBME's and the public's interest in fair

testing procedures, and disserve all other Step 2 CK examinees, including those the ADA is meant to protect.

A stay is warranted to maintain the status quo while this Court reviews the district court's preliminary injunction ruling. Given the pressing September 4 deadline imposed by the district court for reporting Plaintiff's score, NBME respectfully requests a ruling from this Court by September 4.

## A.   National Board of Medical Examiners

NBME is a nonprofit organization that, together with the Federation of State Medical Boards, sponsors the USMLE. Declaration of Michael Barone ("Barone Decl.") ¶ 2. The USMLE "Step" exams, including the Step 2 CK, are standardized tests that medical licensing authorities across the country rely on as part of their licensure process. *Id.* Residency programs also rely on USMLE scores in evaluating residency applications. *Id.* ¶ 13.

All examinees take the USMLE exams under the same testing conditions, other than individuals who are disabled within the meaning of the ADA. *Id.* ¶ 3. NBME provides reasonable testing accommodations to disabled examinees and conscientiously evaluates each request for accommodations.

-4-

*Id.* NBME's "procedures are designed to ensure that individuals with *bona fide* disabilities receive accommodations, and that those without disabilities do not receive accommodations that they are not entitled to, and which could provide them with an unfair advantage when taking the medical licensing examination." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 88-89 (2d Cir. 2004).

In the wake of the recent college admissions scandal, which illustrated the ease with which students can obtain diagnoses that enable them to secure accommodations on high-stakes tests, NBME's "duty to ensure that its examination is fairly administered to all those taking it" has never been clearer.[1] *See id.* at 89.

## B.   Meaghan Doherty

Meaghan Doherty is a 26-year-old medical student in her final year at Tulane University School of Medicine. Ex.

---

[1] *See, e.g.*, Jennifer Medina et al., *Actresses, Business Leaders and Other Wealthy Parents Charged in U.S. College Entry Fraud*, New York Times, March 12, 2019, available at https://www.nytimes.com/2019/03/12/us/college-admissions-cheating-scandal.html.

145523095.1

C, at 2.[2] She claims to be disabled under the ADA and entitled to 50 percent extra testing time on the Step 2 CK.

Plaintiff has excelled academically since a young age. In elementary through high school, Plaintiff was "accustomed to . . . being a top performer," was told by teachers she was "a great student," and "always made honor roll." *Id.* at 7-8. She purportedly received reports from healthcare providers that she suffered from impairments, *see, e.g.*, *id.* at 7—none of which reflected below-average reading abilities, *see* Dist. Ct. Dkt. No. ("Dkt. No.") 15, at 7-8—but "refused all the accommodations the school offered," Ex. C., at 7. Plaintiff never received any accommodations, formal or informal, until medical school, *id.* at 4-5, and she was an exceptional student, Ex. K, at 3 (testifying she had a 3.75 grade point average at a high school with a "superior academic rating").

Plaintiff likewise excelled on standardized tests that required reading under time pressure. She scored in the top one percent of examinees who took the ACT college admissions test in 2010. Ex. G. On the SAT, Plaintiff scored in the

---

[2] All exhibit citations refer to those attached to the Declaration of Alison R. Caditz ("Caditz Decl.").

top 16 percent on the "Critical Reading" subtest.[3] Ex. H; *see Love v. Law Sch. Admission Council, Inc.*, 513 F. Supp. 2d 206, 227 (E.D. Pa. 2007) (noting that the ACT and SAT "are strictly timed and . . . involve reading and processing information"). With no accommodations, Plaintiff earned 21 college credits based on strong scores on her high school Advanced Placement ("AP") exams. Ex. E, at 3. And Plaintiff performed exceptionally well on the MCAT, scoring—on her first try—in the top 12 percent of all test-takers between January 2012 and September 2014, with a Verbal Reasoning score in the top five percent. Ex. I. Again, Plaintiff earned these outstanding scores without extra testing time or other accommodations.

After Plaintiff started medical school and apparently was no longer at the top of her class, she went to see a psychologist, Dr. Brockman, for an evaluation so she could "request accommodations" in her medical school classes. Ex. E, at 1. Dr. Brockman's report starts by noting—incorrectly—

---

[3] *See SAT Percentile Ranks: 2011 College-Bound Seniors— Critical Reading, Mathematics and Writing Percentile Ranks*, College Board, https://secure-media.collegeboard.org/digitalServices/pdf/SAT-Percentile_Ranks_2011.pdf.

that Plaintiff "received accommodations throughout her elementary and high school years." *Id.* It then provides the results from a battery of tests administered to Plaintiff, all but one of which reflected average to superior skill in reading.[4] *Id.* at 19-24.

Plaintiff scored in the sixth percentile on a single, one-minute subtest of the Nelson Denny Reading Test, and Dr. Brockman relied primarily on that result in diagnosing her with a learning disability in reading that, in her view, warranted extra test time. *Id.* at 17, 24. In an Addendum to the evaluation, Dr. Brockman explained that percentile scores on the Nelson Denny Reading Test are not based on the general population but "the educational level that most closely resembles the individual being tested." Ex. F, at 2.

Relying on Dr. Brockman's evaluation, Plaintiff requested and was granted an accommodation of time and a half on written tests at Tulane University School of Medicine. Ex. C, at 5. She later requested accommodations for Step 1 of the USMLE. *Id.* at 9.

---

[4] Dr. Brockman also conducted a diagnostic interview with Plaintiff and her father, state-court Judge Mark Doherty. Ex. E., at 1.

-8-

NBME denied the request for accommodations on Step 1 and Plaintiff passed under standard testing conditions. Ex. J, at 1. The score report shows that Plaintiff's passing score, albeit lower-than-desired, reflected her relatively poor performance on three subjects, not a shortage of time. *Id.* at 2.

Plaintiff also requested accommodations for the Step 2 CK. Ex. C, at 3. When her request was denied, she sued NBME.

## C.   District Court Proceedings

This lawsuit had a strange beginning and only got stranger from there. To start, Plaintiff did not file a complaint. Instead, she initiated this lawsuit by filing an Application for Temporary Restraining Order with Equitable Relief and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Application") on July 22, 2019. Dkt. No. 1; *see* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").

The Application alleges that Plaintiff is entitled to an accommodation because she has been diagnosed with a Learning Disability with Impairment in Reading, Attention Deficit Disorder, and Generalized Anxiety Disorder. Dkt. No.

-9-

1-1, at 2-3, 18. Plaintiff sought a mandatory injunction requiring NBME to (1) administer the test with 50 percent extra time, on August 6, 2019, and (2) expedite grading her exam and provide the results by August 30, 2019. *Id.* at 18-19. Plaintiff also moved, in effect, to file all documents in the case under seal, asking the court to seal her Application and supporting documents, all medical records, and any pleading that "references plaintiff's disabilities or medical history or diagnoses." Dkt. No. 2 (July 22, 2019).

Three days later, without awaiting any response from NBME, the district court issued a one-page *ex parte* sealing order. Dkt. No. 4 (July 25, 2019). The court sealed the *entire case* and barred not only the public's, but the *parties'* access to the online docket, requiring that they "file" by emailing the Clerk. Thus, to obtain a copy of the current docket report, NBME's counsel must request a PDF version from the case manager, as it is not accessible on Pacer. As far as the public is concerned, this case does not exist.

Despite the presumption of public access to judicial records and the court's duty to "balance the public's common law right of access against the interests favoring

-10-

nondisclosure," *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993), the court offered no explanation or analysis in its ruling—a signed version of Plaintiff's proposed order, Dkt. No. 4. Given the lack of explanation, the sealing order would seem to be a clear abuse of discretion.[5]

The next day, the district court denied Plaintiff's request for a temporary restraining order, finding that she had failed to satisfy Federal Rule of Civil Procedure 65, but set a hearing on her preliminary injunction request for August 1. Dkt. No. 6 (July 26, 2019). NBME was not served with a Summons and a copy of Plaintiff's Application until July 30 (a copy of the Application had been sent to NBME the prior week by Federal Express). Dkt. No. 15, at 1-2.

Because NBME had insufficient time to obtain local counsel, put on evidence, file a brief, or even attend the preliminary injunction hearing in person, its out-of-town counsel requested and was granted permission to participate by telephone. Plaintiff put on a single witness—the Plaintiff—who was represented by her mother (a fact witness) and

---

[5] *See Van Waeyenberghe*, 990 F.2d at 849-50 (holding that the district court abused its discretion by failing to weigh competing interests before sealing an order).

another lawyer. NBME requested permission to file a post-hearing brief, and the parties were given until 12:30 p.m. the next day to do so. Ex. B, at 2.

The district court ruled on Plaintiff's Application on August 5, 2019, granting Plaintiff's request for a mandatory preliminary injunction and ordering NBME to administer the Step 2 CK to Plaintiff the next day, on August 6, with 50 percent extra time. *Id.* at 10. NBME complied with the district court's order.

Although the case was not over, Plaintiff quickly moved for an award of attorneys' fees and costs. Dkt. No. 27.

NBME filed its Notice of Appeal on August 9. Dkt. No. 21. The district court, however, did not submit the Notice to this Court until August 15, after undersigned counsel inquired and the Fifth Circuit Clerk's Office confirmed the district court had failed to submit the Notice. Caditz Decl. ¶ 3. NBME was then required to request leave to have a transcript prepared as part of its appeal, even though it is a party, based on the sealing order. *Id.* ¶ 4.

On August 22, 2019, NBME requested that the district court clarify the scope of the preliminary injunction, and, if

-12-

necessary, enter a stay pending appeal. Dkt. No. 30. The court denied the motion on August 27. Ex. A, at 3. First, the court did "not believe clarification of its order [was] necessary," but ordered, for the first time, that NBME release Plaintiff's score in the ordinary course on or before September 4 notwithstanding NBME's pending appeal.[6] *Id.* Second, the court denied NBME's motion to stay pending appeal without "stat[ing] any reasons . . . for its action." *See* <u>Fed. R. App. P. 8(a)(2)(A)(ii)</u>. NBME promptly filed this Motion.

## ARGUMENT

Plaintiff is not "disabled" and should not have received extra time. It is a sad commentary on our manic academic culture that Plaintiff or anyone else considers her "disabled." Her receiving extra time was unfair to other test-takers and

---

[6] NBME moved to clarify because, although Plaintiff had specifically requested an injunction requiring NBME to release her score, Dkt. No. 1-1, at 18-19, the district court's order did not mention such relief, Ex. B, at 10. NBME thus assumed that the omission was intentional, but requested clarification to avoid any suggestion that it had failed to comply in good faith with the court's order. Plaintiff also filed a motion to clarify, recognizing that the court had not ordered NBME to release her accommodated test score. Dkt. No. 33. Nevertheless, in denying NBME's motion (while clarifying its prior order), the court stated that the "premise" of NBME's motion was "rather disingenuous." Ex. A, at 2.

harms both examinees and the entities that rely on their scores. For that reason, NBME seeks an emergency stay pending a ruling by this Court on the merits of the mandatory preliminary injunction.

This Court considers four factors in deciding a motion to stay pending appeal: (1) whether the applicant has made a strong showing it is likely to succeed on the merits; (2) whether the applicant will be irreparably harmed; (3) whether a stay will substantially harm the other party; and (4) where the public interest lies. *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014).

The first two factors are "most critical," and maintaining "the status quo is an important consideration[.]" *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (citation omitted). The inquiry requires "an individual assessment of . . . the circumstances attendant to the particular stay request." *Campaign for S. Equal. v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014) (citations omitted). This Court does "not decide the merits of [NBME's] appeal" and "consider[s] only whether the district court's injunction should be stayed pending complete review." *Barber*, 833 F.3d at 511 (citation omitted).

Here, all four factors favor granting a stay.

## I.  This Court is likely to reverse the preliminary injunction on the merits.

Plaintiff is not "disabled," and the district court's mandatory injunction based on that finding was improper. To assess likelihood of success, this Court "look[s] to 'standards provided by the substantive law.'" *Janvey v. Alguire*, 647 F.3d 585, 596 (5th Cir. 2011) (citation omitted). The grant of a preliminary injunction is reviewed for abuse of discretion, but questions of law—including mixed questions of law and fact—are reviewed *de novo*. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). Whether an individual is disabled under the ADA is a mixed question of law and fact reviewed *de novo*. *Mann v. La. High Sch. Athletic Ass'n*, 535 F. App'x 405, 410, 412 (5th Cir. 2013) (unpublished) (reversing grant of preliminary injunction).

"Disability" is a legal term of art tied to significant impairment relative to most people, not elite peer groups at college or medical school or elite professional settings. A "disability" requires "a physical or mental impairment that substantially limits one or more major life activities," or "a record of such an impairment." 42 U.S.C. § 12102(1)(A)-(B). An

-15-

impairment is only a disability "if it substantially limits the ability of an individual to perform a major life activity as *compared to most people in the general population*." 28 C.F.R. § 36.105(d)(1)(v) (emphasis added).

And while the ADA, as amended, should be construed to provide "broad coverage," this Court has stressed that Congress "in no way eliminated the term ['disability'] from the ADA or the need to prove a disability[.]" *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 & n.4 (5th Cir. 2013).

Plaintiff has gerrymandered a "reading disability" by emphasizing her low performance on a one-minute reading test that did not compare her to the general population. The district court erroneously determined that "[t]he evidence and testimony clearly support that Plaintiff has an impairment that substantially limits her in the major life activities of reading **when compared to most people in the general population**." Ex. B, at 7 (emphasis added).

No evidence supports the "compared to most people" part of that finding. Rather, Plaintiff's own evaluations and academic history show that her reading ability is, at worst, average and likely above average. *See Black v. Nat'l Bd. of*

*Med. Exam'rs*, 281 F. Supp. 3d 1247, 1249 (M.D. Fla. 2017)

("Of course, average (or above-average) performance pre-

sumptively establishes the absence of a substantial limita-

tion.").[7]

　　As an initial matter, Plaintiff's diagnoses—even as-

suming they were proper—cannot alone establish she is dis-

abled. *See* 28 C.F.R. § 36.105(d)(1)(v) ("[N]ot every impair-

ment will constitute a disability[.]"); *Glueck v. Nat'l Confer-

ence of Bar Exam'rs*, No. SA-17-CV-451-XR, 2018 WL

3977891, at *4 (W.D. Tex. Aug. 20, 2018) ("[T]he diagnosis of

an impairment, alone, is not enough to show that a person is

disabled under the ADA[.]" (citing *Mann*, 535 F. App'x at

411)). The district court concluded that Plaintiff has a

―――――――――――――――

[7] Plaintiff argued below that the "most people" standard should not apply. Dkt. No. 1-1, at 7-9. Unsurprisingly, the district court did not embrace that argument, which is barred by both the unambiguous text of the regulation and case law interpreting it in the specific context at hand. 28 C.F.R. § 36.105(d)(1)(v); *see, e.g., Bibber v. Nat'l Bd. of Osteopathic Med. Exam'r, Inc.*, No. CV-15-4987, 2016 WL 1404157, at *6 (E.D. Pa. Apr. 11, 2016) ("It is inappropriate under the ADA to compare an individual to her academic peer group or, in the case of standardized tests, to other test-takers who are not representative of the general population." (citations omitted)); *Rawdin v. Am. Bd. of Pediatrics*, 985 F. Supp. 2d 636, 651 (E.D. Pa. 2013) (comparing "Dr. Rawdin not with other test-takers or doctors taking a certification exam, but with members of the general population" (citations omitted)), *aff'd*, 582 F. App'x 114 (3d Cir. 2014).

history of impairments, struggled to overcome them, and had good reasons for not seeking accommodations earlier. Ex. B, at 7. But even if true, none of that matters if Plaintiff's alleged impairments do not substantially limit her ability to read compared to most people.

She is not impaired compared to most people. Plaintiff relied on her alleged learning disability with an impairment in reading to support her need for extra testing time. But she proffered *no evidence* that her reading abilities fall below average in the general population. In concluding otherwise, the district court's preliminary injunction order miscited two of Dr. Brockman's findings.

First, the district court referred to Dr. Brockman's finding that Plaintiff's "reading ability was . . . as low as just the 6th percentile of the general population on the Nelson Denny Reading Test ['NDRT']." *Id.* That finding is clearly erroneous because the NDRT results did not compare her to the "general population." She was compared to other college graduates. According to Plaintiff's own psychologist, the NDRT is "unique in that the percentile scores are *not based on the normal population* but the educational level that most

-18-

closely resembles the individual being tested." Ex. F., at 2 (emphasis added) (stressing that Plaintiff "was compared with other college graduates NOT the 'normal' population").

Implicitly conceding Plaintiff does not read below average, Dr. Brockman argued that NBME's interpretation of the ADA was "outdated" and Plaintiff "should be assessed in comparison to her fellow medical students sitting for the US-MLE Step 2 Test." *Id.* at 4. Similarly, Plaintiff argued that she should be compared to her peers, not that her reading level falls below average compared to most people. Dkt. No. 1-1, at 7-9; *see also* Ex. K, at 6 (testifying (incorrectly) that "[a]nyone can take the MCAT" and "[t]here [are] no qualifications that have to be met").

Second, the district court erroneously cited Dr. Brockman as finding that Plaintiff's "reading 'decoding' speed [is] slower than 75% of students against the general population." Ex B., at 3. That finding is also clearly erroneous because her decoding score did not relate to the "general population." Plaintiff's "decoding speed . . . was slower than 75% of *students her age*."[8] Ex. E, at 13 (emphasis added).

---

[8] NBME made these same arguments in its motion to the district court for a stay pending appeal, pointing to the two

The district court thus had no basis for concluding that Plaintiff is disabled under the ADA. To the contrary, the record compels the opposite conclusion: Plaintiff is a bright, talented individual whose reading abilities are, at worst, average but likely well above average. The mandatory preliminary injunction—which "should not [have] issued unless the facts and law clearly favor[ed] the moving party," and was "particularly disfavored," *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)—was granted on findings that are clearly erroneous. The first factor weighs strongly in NBME's favor.[9]

---

findings the court had miscited in its preliminary injunction order. Dkt. No. 30-1, at 8-11. Strikingly, neither Plaintiff's opposition motion nor the district court's order denying a stay so much as acknowledge the complete lack of evidence that Plaintiff is disabled in reading compared to most people. *See* Ex. A; Dkt. No. 32.

[9] Plaintiff's outstanding test scores earned under standard conditions only bolster the conclusion that she is not disabled. *See, e.g.*, *Black*, 281 F. Supp. 3d at 1249-50 ("[Plaintiff's] history of superlative academic performance refutes the claim that ADHD substantially limits Black's ability to learn . . . in comparison to the average person."); *Bibber*, 2016 WL 1404157, at *8 ("[Plaintiff's] confidence in taking those exams without even attempting to receive accommodations speaks volumes about whether her dyslexia is substantially limiting when compared to high achieving groups of people, let alone the general population.").

## II.    NBME and other test-takers will be irreparably harmed absent a stay.

NBME is irreparably harmed when "the award of potentially unfair accommodations on [an] exam before a merits determination will affect the comparable validity of the scores of the other examinees, and [it] has no remedy once it reports [Plaintiff's] scores." *Bach v. Law Sch. Admission Council*, No. 1:13-cv-888, 2014 U.S. Dist. LEXIS 124632, at *7 (M.D.N.C. Feb. 4, 2014).

Here, releasing Plaintiff's score before this Court can review the merits of the preliminary injunction will impact the relative ranking of other Step 2 CK examinees and their residency applications. Absent a stay, NBME will send Plaintiff her Step 2 CK score on September 4. Barone Decl. ¶ 13. On September 5, Plaintiff will request that NBME submit her Step 2 CK score to the Electronic Residency Application Service ("ERAS") as part of her application to residency programs, which will in turn receive the results as early as September 15. *Id.* ¶¶ 11-13; *see* Ex. K, at 4 (testimony from Plaintiff that Step scores are "the most important factor for [an applicant's] residency application"). Plaintiff admitted that if she is accepted to a residency program based on the

-21-

Step 2 CK score she received with accommodations, her position will come at the expense of another applicant. *Id.* at 8.

The mandatory injunction will thus undermine the integrity of her scores, the fairness of the residency selection process, and NBME's "duty to ensure that its examination is fairly administered to all those taking it." *Powell*, <u>364 F.3d at 89</u>; *see Rothberg v. Law Sch. Admission Council*, <u>102 F. App'x 122, 123</u>, <u>126</u> (10th Cir. 2004) (unpublished) (overturning preliminary injunction that allowed plaintiff to take the LSAT with extra testing time, after staying the preliminary injunction, and noting that LSAC would be irreparably harmed if the accommodated test score were released). Other test-takers who will lose out because of Plaintiff's unfair score will also be irreparably harmed.

## III. A stay will not substantially harm Plaintiff.

By contrast, Plaintiff will not be substantially harmed if she cannot immediately apply for residency positions with a Step 2 CK score in hand. She has until February 26, 2020 to verify her credentials, including a passing Step 2 CK score, for the upcoming residency "Match" process, Ex. L,

and until April 2020 to pass the Step 2 CK under Tulane's rules (or later if she requests a leave of absence), Ex. M.

Tulane "recommend[s]" that students take the Step 2 CK "before December 31 of their senior year to participate in the [residency] Match." *Id.* It is difficult to imagine a medical school would recommend taking the exam by December 31, 2019 if, as Plaintiff asserts, doing so would irreparably harm her prospects in the application process.

Regardless, Plaintiff would not be significantly harmed even if she had to wait a year to apply for a residency position, the next part of her graduate medical education. Any alleged harm associated with the potential delay is unduly speculative and, in all events, not irreparable. *See Doe v. N.Y. Univ.*, 666 F.2d 761, 773 (2d Cir. 1981) (holding that "a one-year delay in obtaining admission to a graduate school" was "insufficient to warrant an injunction"); *Rothberg*, 102 F. App'x at 125 (reasoning that a preliminary injunction "mandating that LSAC report her accommodated score to various law schools" was not needed, as "[n]othing requires [her] to apply to law schools now"); *Bach*, 2014 U.S. Dist. LEXIS

124632, at \*6 ("[D]elayed entry to law school is not the kind of harm that warrants mandatory injunctive relief.").

Only amplifying this uncertainty are Plaintiff's strong past standardized test results and passing score on the Step 1, which suggest Plaintiff would likely have passed the Step 2 CK with no accommodations and is likely to do so if she re-tests. *See Kelly v. W. Va. Bd. Of Law Exam'rs*, No. 2:08-cv-00933, 2008 U.S. Dist. LEXIS 56840, at \*6-7 (S.D.W. Va. July 24, 2008) (insufficient showing of harm where plaintiff had done well on tests without accommodations); *Baer v. Nat'l Bd. of Med. Exam'rs*, 392 F. Supp. 2d 42, 49 (D. Mass. 2005) ("[I]t is not certain that she will suffer the predicted harm; she may pass the test.").

Plaintiff's testimony at the preliminary injunction hearing further demonstrates the speculative nature of her alleged harm. Plaintiff asserted that she will not be invited to interview by her desired residency programs unless her application includes a high Step 2 CK score, but she testified she will get an interview with Tulane's residency program— one she is interested in—even without a Step 2 CK score. Ex. K, at 8-9; *cf. Doe v. Ohio State Univ.*, No. 2:15-cv-2830, 2016

145523095.1

WL 692547, at \*11 (S.D. Ohio Feb. 22, 2016) ("If he does [obtain a residency], it would be, on this record, mere speculation as to whether [it] would be of lesser value to him than any residency he would get if he were able to represent to various residency programs that he was a student in good standing," and, "[e]ven if that were true, there is no evidence in this record about how the difference in the quality of a residency would play out over the course of a career[.]"). Plaintiff also testified that she intends to apply to an obstetrics and gynecology residency program, which is easier to get into than about 75 percent of other types of residency programs. Ex. K, at 5.

In any event, no unwarranted harm will come of maintaining the status quo because Plaintiff is not disabled under the ADA and the district court's preliminary injunction based on that finding was improper.[10] *See supra*, Part I.

---

[10] In denying NBME's motion to clarify, the district court ignored the above arguments regarding the alleged harm to Plaintiff, and simply noted that "NBME has not demonstrated any basis for disturbing the Court's previous finding of irreparable harm[.]" Ex. A, at 2.

## IV.   The public interest strongly favors a stay.

The public interest also weighs in favor of staying the injunction pending appeal. Like NBME, the public "has an interest in the fair administration of standardized tests." *Bach*, 2014 U.S. Dist. LEXIS 124632, at \*8; *see Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 381 (5th Cir. 2016) (concern that the plaintiff "might obtain an unfair advantage over other students by having an extra two weeks to study" was a legitimate and "serious" reason for denying accommodations).

If residency programs rely on a score Plaintiff received with an unwarranted accommodation, it will unfairly advantage Plaintiff to the detriment of other Step 2 CK examinees, residency applicants, and residency programs. Because this includes residency applicants with legitimate disabilities within the meaning of the ADA, the lower court's preliminary injunction harms the very population the ADA is designed to protect.

## CONCLUSION

The district court erred in concluding that Plaintiff is disabled under the ADA. The mandatory preliminary injunction requiring NBME to release Plaintiff's score, obtained

with extra testing time other examinees would welcome but
do not receive, should be stayed pending appeal.


DATED: August 29, 2019

Robert A. Burgoyne
PERKINS COIE LLP
700 Thirteenth Street N.W.,
Suite 600
Washington, DC 20005-3960
Telephone: 202.654.1744
Facsimile: 202.624.9548

/s/ Eric B. Wolff
Eric B. Wolff
Alison R. Caditz
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Defendant-Appellant
NATIONAL BOARD OF
MEDICAL EXAMINERS

*Counsel of Record for Defendant-Appellant*

## CERTIFICATE OF CONFERENCE

On August 27, 2019, counsel for NBME contacted counsel for Plaintiff regarding this motion and the relief requested herein. Counsel represented that they will oppose this motion.

/s/ Eric B. Wolff
Eric B. Wolff

*Counsel of Record for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of <u>Federal Rule of Appellate Procedure 27(d)(2)(A)</u> because it contains 5,164 words, excluding the parts exempted by Rule 27(a)(2)(B); and (2) the typeface and type style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook font.

<u>/s/ Eric B. Wolff</u>
Eric B. Wolff

*Counsel of Record for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE WITH RULE 27.3

I certify the following complies with Fifth Circuit Rule 27.3:

- Before filing, counsel for Defendant contacted the Clerk's Office and opposing counsel to advise them of Defendant's intent to file this motion.

- The facts stated herein supporting emergency consideration of this motion are true and complete.

- The Court's review of this motion is requested by September 4, 2019.

- True and correct copies of relevant orders and other documents are attached as Exhibits to this motion, filed separately.

- This motion is being served at the same time it is being filed.

/s/ Eric B. Wolff
Eric B. Wolff

*Counsel of Record for Defendant-Appellant*

145523095.1

## CERTIFICATE OF SERVICE

On August 29, 2019, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Eric B. Wolff
Eric B. Wolff

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MEAGHAN DOHERTY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 19-11790** |
| **NATIONAL BOARD OF MEDICAL EXAMINERS** | **SECTION: T** |

## <u>ORDER</u>

Before the Court are the following: (1) Motion to Clarify and, If Necessary, for a Stay Pending Appeal filed by Defendant National Board of Medical Examiners ("NBME");[1] (2) Defendant NBME's Motion to Expedite Consideration of its Motion to Clarify and, If Necesssary, for a Stay Pending Appeal;[2] (3) Plaintiff Meghan Doherty's response/memorandum in opposition to Defendant's Motion to Clarify and, If Necessary, for a Stay Pending Appeal;[3] (4) Plaintiff's Motion to Clarify Order of August 5, 2019;[4] and (5) Plaintiff's Motion for Expedited Consideration of her Motion to Clarify Order of August 5, 2019.[5]

**IT IS ORDERED** that the Defendant's Motion to Clarify and, If Necessary, for a Stay Pending Appeal[6] is hereby DENIED for the following reasons. Defendant NBME states that it has complied fully with the Court's Order of August 5, 2019,[7] by permitting Plaintiff to take the Step 2 CK Examination on August 6 and 7, 2019, with extra testing time. However, Defendant now asks the Court to clarify whether it also intended to order Defendant to release Plaintiff's score on the Step 2 CK Examination in ordinary course, which is expected to be released to

---

[1] R. Doc. 30.
[2] R. Doc. 31.
[3] R. Doc. 32.
[4] R. Doc. 33.
[5] R. Doc. 35.
[6] R. Doc. 30.
[7] R. Doc. 20.

Plaintiff on or before September 4, 2019, as well as to the Electronic Residency Application Service ("ERAS") and other third parties thereafter at the request of Plaintiff. Otherwise, Defendant suggests that it has already fully complied with the Court's order and need not release Plaintiff's score to her or anyone she may in future authorize to receive it.

This Court finds the premise of Defendant's Motion to Clarify to be rather disingenuous, because the Court in its Order of August 5, 2019, specifically found that Plaintiff had demonstrated through uncontroverted evidence and testimony the irreparable harm she would suffer if she were not allowed to take the Step 2 CK Examination with accommodations on August 6, 2019. The Court found *inter alia* that, if Plaintiff were to take the exam any later than August 6, 2019, she would be at an irreparable disadvantage in securing residency interviews and obtaining a match, and she would incur a permanent blemish on her academic record, which could not be removed.[8] Plaintiff explained at length during her testimony[9] the importance of participating in the residency matching program at the earliest opportunity, that is, when ERAS begins sending out assembled applications and accompanying documents, including USMLE transcripts, to residency programs starting on or about September 15, 2019. Plaintiff testified in detail regarding the harm and disadvantages she would suffer if she were not permitted to take the examination, with accommodations, in enough time to participate in the earliest round of the residency application process. Defendant NBME has not demonstrated any basis for disturbing the Court's previous finding of irreparable harm, which harm would in effect be virtually certain to occur if the Court were to grant Defendant's motion to clarify in the manner sought by Defendant, or alternatively to grant Defendant's motion for a stay pending appeal.

---

[8] R. Doc. 20, p. 8.
[9] R. Doc. 34.

Furthermore, the Court does not believe clarification of its order is necessary because that order obviously requires that Plaintiff's test score must be released in the same manner and at the same time as those of all other examinees taking the Step 2 CK Examination on or about August 6 and 7, 2019. It is the Court's view that the Defendant would be in violation of the Order of August 5, 2019, if it does otherwise. Accordingly, Defendant's Motion to Clarify and, If Necessary, for a Stay Pending Appeal is DENIED.

**IT IS FURTHER ORDERED** that Defendant's Motion to Expedite Consideration of the Motion to Clarify and, If Necessary, for a Stay Pending Appeal[10] is DENIED as MOOT.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Clarify the Order of August 5, 2019,[11] is hereby DENIED for the following reasons. Essentially, Plaintiff contends the score should be released to her by email by 4:00 p.m. on August 30, 2019, on the basis there was a posting by the NBME on its website that there could be delays in the posting of scores of examinees taking the examination between July 1, 2019, and August 8, 2019. However, Plaintiff has not demonstrated that release of her score to her any earlier than in ordinary course, that is, on or before September 4, 2019, as indicated by Defendant in its Motion to Clarify, would be necessary to prevent any irreparable harm. Accordingly, Plaintiff's Motion to Clarify is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Expedite Consideration of her Motion to Clarify[12] is DENIED as MOOT.

**New Orleans, Louisiana**, on this 27th day of August, 2019.

_____

**GREG GERARD GUIDRY**
**UNITED STATES DISTRICT JUDGE**

---

[10] R. Doc. 31.
[11] R. Doc. 33.
[12] R. Doc. 35.