# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-30661

United States Court of Appeals
Fifth Circuit

**FILED**

November 7, 2019

Lyle W. Cayce
Clerk

MEAGHAN DOHERTY,

> Plaintiff - Appellee

v.

NATIONAL BOARD OF MEDICAL EXAMINERS,

> Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-11790

Before OWEN, Chief Judge, and HAYNES and COSTA, Circuit Judges.

PER CURIAM:*

Appellant, the National Board of Medical Examiners ("NBME"), appeals the district court's grant of a mandatory preliminary injunction allowing Appellee Meaghan Doherty to take a medical licensing exam known as the Step 2 CK ("Step 2") Exam with fifty percent extra time. For the reasons set forth below, we VACATE the district court's grant of a preliminary injunction and REMAND the case for further proceedings consistent with this opinion.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-30661

## I.    Facts and Proceeding

The facts are well-known to the parties and time is of the essence, so we limit this opinion to providing only the abbreviated facts necessary to put NBME's appeal in context and understand our holding. Doherty is in her final year at Tulane University School of Medicine ("Tulane") and must pass the Step 2 Exam to graduate from Tulane and progress to the next stage in her medical career: a residency program. Doherty requested an accommodation of fifty percent extra time for the Step 2 Exam from the exam's sponsor, NBME, stating that she had an intellectual disability in reading based on her medically diagnosed "Learning Disability with Impairment in Reading: rate" ("reading impairment"). NBME denied her request, finding that her reading impairment did not qualify as a disability under the Americans with Disabilities Act ("ADA"), the basis upon which the request was made.

Doherty then sought a preliminary injunction in district court to allow her to take the Step 2 Exam with her requested accommodation. The district court found that Doherty satisfied the requirements for a preliminary injunction and granted her request. NBME timely appealed.

## II.    Jurisdiction & Standard of Review

The district court had federal question jurisdiction under 28 U.S.C. § 1331. We have jurisdiction over the appeal under 28 U.S.C. § 1292(a)(1).

We review a district court's grant of a preliminary injunction for abuse of discretion. *Women's Med. Ctr. of Nw. Hous. v. Bell*, 248 F.3d 411, 418–19 (5th Cir. 2001). To obtain a preliminary injunction, the movant must demonstrate "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that the injunction might cause to the defendant; and (4) that the injunction will not disserve the public interest." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 288 (5th Cir. 2012).

No. 19-30661

We review factual findings for clear error and legal conclusions de novo; we also review a decision grounded in an erroneous application of legal principles de novo. *Id.*

## III.    Discussion

Because each of the preliminary injunction requirements must be satisfied, "the absence of likelihood of success on the merits is sufficient to make the district court's grant of a preliminary injunction improvident as a matter of law[.]" *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 203 (5th Cir. 2003). To show a substantial likelihood of success on the merits, Doherty must establish a prima facie case of disability under the ADA. *See Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). The ADA defines "disability" as (1) "a physical or mental impairment that substantially limits one or more major life activities of [an] individual" ("Actual Disability") or (2) "a record of such an impairment" ("Record of a Disability").[1] 42 U.S.C. § 12102(1)(A)–(B). Thus, to establish a prima facie case of disability, Doherty must show that she has or has a record of (1) a physical or mental impairment (2) that substantially limits (3) one or more of her major life activities. She contends that her reading impairment constitutes such a disability.

We conclude that Doherty failed to show a substantial likelihood of success on the merits of her claim that she had an Actual Disability or a Record of a Disability. Accordingly, we do not reach the other three preliminary injunction requirements. *See Lake Charles Diesel*, 328 F.3d at 203.

---

[1] The ADA provides a third definition of disability, *see* 42 U.S.C. § 12102(1)(C), but that definition is not implicated by this case.

3

No. 19-30661

## A. Actual Disability Under The ADA

Mental impairment includes intellectual disability, and reading is a major life activity. *See* 28 C.F.R. § 36.105(b)(1)(ii), (c)(1)(i). Understandably, the ADA does not provide detail on every aspect of what turns an impairment into a qualifying disability, given the sheer number of potential disabilities. *See* 42 U.S.C. § 12102. However, the U.S. Department of Justice's ("DOJ's") implementing regulations provide a key basis for the analysis: "[a]n impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the *general population*." 28 C.F.R. § 36.105(d)(1)(v) (emphasis added). While the regulations provide for expansive construction, *see id.* § 36.105(d)(1)(i), we must still analyze this phrase logically.

The following evidence was the keystone of Doherty's contention that she qualified for the accommodation sought: (1) her Wechsler Individual Achievement Test-Third Edition ("WIAT-III") results, (2) her Nelson Denny Reading Test ("NDRT") Reading Speed subtest, and (3) her testimony, which discussed the impact of her reading impairment on her testing ability. The first two results were provided by way of a letter from Doherty's psychologist (Dr. Brockman) who administered the tests and who wrote a follow-up addendum following NBME's rejection of Doherty's request.

### 1. WIAT-III and NDRT Scores

The district court in its opinion appeared to apply the proper test, "general population," but, in doing so, relied considerably on the NDRT which Dr. Brockman admitted did not compare Doherty's reading ability to the general population. Instead, Dr. Brockman argued that "[t]he correct comparison of [Doherty's] reading rate [was] with the cohort on which the NDRT reading percentile scores [were] based, namely, other college educated students, not the general population." Thus, it was legal error for the district

No. 19-30661

court to rely upon the NDRT in comparing Doherty's reading impairment to that of the general population.[2]     *See Opulent Life Church*, 697 F.3d at 288.

Despite Dr. Brockman's candid admission, Doherty argues that her WIAT-III and NDRT scores, which compared her reading ability to other students her age or college-educated students, respectively, were a comparison to the general population.   But DOJ regulations and other circuit courts' precedent say otherwise.[3]   In implementing regulations on the term "substantially limits," DOJ "clarified that it does not endorse reliance on similarly situated individuals to demonstrate substantial limitations." Amendment of Americans with Disabilities Act Title II and Title III Regulations to Implement ADA Amendments Act of 2008, 81 Fed. Reg. 53,204, 53,230 (Aug. 11, 2016) (codified at 28 C.F.R. Pt. 35, App. C).   For example, DOJ noted "that when determining whether an elderly person is substantially limited in a major life activity, the proper comparison is most people in the general population, and not similarly situated elderly individuals." *Id.*   Several of our sister circuits have similarly rejected defining substantial limitation by comparing an individual to their peers.   *See Singh v. George Washington Univ. Sch. of Med. & Health Scis.*, 508 F.3d 1097, 1103 (D.C. Cir. 2007) (rejecting the plaintiff's argument that he should be compared to those of "similar age and educational background"); *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1066 (9th Cir. 2005) (rejecting the plaintiff's evidence of disability based on his

---

[2]  The only other test where Doherty faired poorly in Dr. Brockman's assessment, the WIAT-III, also compared her only to other students her age (who, at the age she was tested, likely represent a more highly educated group than the population as a whole), not the general population.   Based on the current record, which does not provide more detail about this comparison group, a comparison to "students her age" does not support a finding that Doherty was likely to succeed in establishing a disability under the ADA.

[3]  Our court has not previously parsed the term "general population."   Because it is clear that the tests supporting Doherty's position do not compare Doherty to the general population, even liberally defined, we need not address the precise parameters of the term "general population" to decide this case.

reading comprehension ability compared to "others in his academic peer group"); *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 631 (6th Cir. 2000) (rejecting the plaintiff's argument that his reading and writing difficulty should be "compared with other persons who have completed their second year of medical school").

We agree that DOJ regulations require an individual with an impairment to be compared to more than just her college-educated or "same-aged student" peers to show a substantial limitation. Accordingly, we conclude that the district court abused its discretion in concluding that Doherty's WIAT-III scores, which compared her reading ability to students her age, and NDRT score, which compared her to college-educated students, were comparisons to the "general population." Absent these tests, Doherty performed within the normal range on other tests. Thus, Doherty's test results failed to show a substantial likelihood that Doherty was likely to succeed on the merits of her claim that she was disabled under the ADA.

### 2. Doherty's Testimony

The district court also relied on Doherty's testimony that she has "a disability that impairs [her] reading rate" that creates a "vast difference" in her performance on the Step Exams as compared to other exams. But Doherty's testimony did not show that her reading impairment substantially limited her when compared to most people in the general population because she did not compare her reading ability to that of anyone but herself. Thus, her testimony does not support a finding that she was likely to succeed on the merits of her claim.

## B. Record of a Disability Under The ADA

The district court also found that Doherty showed a Record of a Disability based on her diagnosed medical disorders. However, diagnosed disorders do not satisfy the ADA's definition of a disability unless they

No. 19-30661

substantially limit one or more major life activities as compared to the general population. *See* 28 C.F.R. § 36.105(a); *see also Mann v. La. High Sch. Athletic Ass'n*, 535 F. App'x 405, 411 (5th Cir. 2013) (per curiam) (holding that a doctor's diagnosis of an anxiety disorder "is insufficient, standing alone to support a finding" that the plaintiff is likely to succeed in proving a disability under the ADA).

Doherty argues that Tulane provided her with accommodations based on the same medical record she provided to NBME. But the record does not provide evidence of whether Tulane gave Doherty accommodations because it found that she met the definition of disability under the ADA; Tulane may grant accommodations to individuals who do not meet the ADA's definition of disability. Moreover, Doherty's reliance on the regulatory requirement that private entities offering an examination must give "considerable weight" to the documentation of past accommodations when considering accommodations requests is misplaced. 28 C.F.R. § 36.309(b)(1)(v). That requirement applies only after a person establishes that they are disabled under the ADA. *See id.* § 36.309(a) (stating that covered private entities "shall offer . . . examinations . . . in a place and manner accessible to *persons with disabilities*" (emphasis added)). Thus, Doherty presented no evidence that Tulane found her to be disabled under the ADA when it provided her with accommodations or that her past accommodations established that she is disabled under the ADA. The district court abused its discretion when it found Doherty to have a Record of a Disability based only on Doherty's medically diagnosed mental disorders and Tulane's unexplained accommodations.

## IV.   Conclusion

For the foregoing reasons, we VACATE the district court's grant of a preliminary injunction and REMAND for further proceedings consistent with this opinion.